Filed 11/13/25  G.L. v. X.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| G.L.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>X.L.,<br><br>Defendant and Respondent. | C099930<br>C100470<br><br>(Super. Ct. No. STA-FL-CUSJ-2019-0002248)<br><br>San Joaquin County |
| G.L.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>X.L.,<br><br>Defendant and Respondent. | C100782<br><br>(Super. Ct. No. 19FL02121)<br><br>Sacramento County<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on October 27, 2025, be modified as follows:

The second paragraph under the heading FACTS AND HISTORY OF THE PROCEEDINGS is modified to read as follows:

Mother appealed the juvenile court's decision. She filed her notice of appeal from the March 20, 2019, minute order on March 28, 2019, nearly one month before the San Joaquin court filed its exit order. However, she later augmented the appellate record to include the exit order filed on April 25, 2019, and through her attorney stated that her appeal "should be construed as being taken from the subsequent April 25, 2019, custody judgment." As mentioned, this court affirmed the judgment in 2020. (*In re J.L., supra*.)

On page 14 of the opinion, prior to the paragraph that begins, "San Joaquin County's exercise of custody jurisdiction," we add the following paragraphs:

Mother contends we cannot rely on the April 25, 2019, exit order because its validity was not adjudicated in her first appeal, and the order is void because it was not listed in the juvenile court's register of actions. Both arguments are incorrect. Mother argues her notice of appeal in *In re J.L.* stated the appeal was taken only from the San Joaquin County court's minute order of March 20, 2019, and thus the April 25 exit order was not before us in that matter. However, it was mother who while that appeal was pending directed us to construe her appeal as being taken from the April 25 exit order. We did so, and we adjudicated and affirmed the order's validity.

Res judicata now bars mother's attempts to attack the exit order except to the extent the order is void. (*OC Interior Services, LLC v. Nationstar Mortgage,*

2

*LLC* (2017) 7 Cal.App.5th 1318, 1327.)  Mother asserts the exit order is void because it is not listed in the juvenile court's register of actions.  A judgment is not effective for any purpose until it is entered.  (Code Civ. Proc., § 664.)  But "[a]ll that is required for the entry of judgment is the act of filing the judgment with the clerk."  (*People v. Financial Casualty & Surety, Inc.* (2021) 64 Cal.App.5th 405, 413; Code Civ. Proc., § 668.5.)  The record indicates the exit order was filed in the superior court on April 25, 2019.  Thus, the judgment was entered on that date, and it has been effective ever since.

We further modify the opinion by adding the following paragraphs before the first paragraph on page 23 starting as "Because mother did not file an appeal from the May 10 order. . .":

In a petition for rehearing, mother contends for the first time that the May 10 order is void and subject to collateral attack.  She asserts the order is void because the Sacramento court and father did not comply with the statutory requirements for terminating the DVRO.  Mother's argument is incorrect.  When a court lacks jurisdiction in its most fundamental sense, i.e., an absence of authority over the subject matter or parties, an ensuing judgment is void and vulnerable to collateral attack at any time.  (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661.)  By contrast, when a court that has fundamental jurisdiction acts contrary to a proscribed procedure, it exceeds its jurisdiction, but its act or judgment in that circumstance is merely voidable.  (*Ibid*.)  The judgment is valid until it is set aside, and a party may be precluded from setting it aside due to res judicata.  (*Ibid*.)

Mother's contentions allege the trial court acted in excess of its jurisdiction, not in the absence of fundamental jurisdiction over the subject matter or the

3

parties. Thus, the May 10 order was potentially voidable, but it is not void for lack of fundamental jurisdiction. Errors made merely in excess of jurisdiction should be challenged directly, and they are not subject to a collateral attack such as mother raises here "unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' " (*People v. American Contractors Indemnity Co., supra*, 33 Cal.4th at p. 661.) Mother has not alleged or presented any evidence showing unusual circumstances prevented her from appealing the May 10 order.

This order does not change the appellate judgment. The petition for rehearing is denied. The request for judicial notice and the request for a stay are denied as moot.

BY THE COURT:


_____
HULL, Acting P. J.


_____
ROBIE, J.


_____
BOULWARE EURIE, J.

Filed 10/27/25  G.L. v. X.L. CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| G.L.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>X.L.,<br><br>    Defendant and Respondent. | C099930<br>C100470<br><br>(Super. Ct. No. STA-FL-CUSJ-2019-0002248)<br><br>San Joaquin County |
| G.L.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>X.L.,<br><br>    Defendant and Respondent. | C100782<br><br>(Super. Ct. No. 19FL02121)<br><br>Sacramento County |

In pro. per. plaintiff and appellant G.L. (mother) and defendant and respondent X.L. (father) are the unmarried parents of J.L. (minor).  In a prior appeal, a panel of this court affirmed an order issued in a dependency case in 2019 by the San Joaquin County

1

Superior Court (San Joaquin County or the San Joaquin court) awarding custody of minor to father.  (*In re J.L.* (Feb. 3, 2020, C089168) [nonpub. opn.], review den. Apr. 15, 2020, S261181.)  Since then, father has had sole legal and physical custody of minor.  The consolidated appeals before us arise from mother's unsuccessful attempts in two different superior courts, San Joaquin County and the Sacramento County Superior Court (Sacramento County or the Sacramento court), to gain custody of minor.

Appealing from a number of orders, mother contends:

(1) San Joaquin County terminated its dependency jurisdiction over the minor's custody in 2019 before it filed its written order, and before the San Joaquin court's family court could assert jurisdiction, Sacramento County exercised emergency jurisdiction over custody, granted custody to mother, and gained exclusive custody jurisdiction.

(2) San Joaquin County exercised only emergency jurisdiction over the minor's custody which later lapsed.

(3) An ex parte Sacramento County order in 2019 that vacated an earlier order by that court granting custody to mother did not permanently vacate the custody order, and the Sacramento court erred by relying on the ex parte order to deny subsequent motions by mother in 2024 requesting it determine custody of minor.

(4) Mother was denied due process in 2023 when she did not receive father's responsive pleading to a motion to modify custody and change venue.

(5) Two San Joaquin County judges who ruled on mother's motions in 2023 and 2024 did not disclose conflicts of interest; and

(6) Both superior courts violated duties under Family Code section 3429 to collect and assess information regarding minor's custody history.

Mother also requests we augment the record to include trial court records created since mother filed her notices of appeal.

Except to grant mother's request to augment the record, we disagree with mother's arguments. We dismiss her appeals from nonappealable orders and affirm the remaining orders against her. Her arguments have been forfeited or are without merit.

FACTS AND HISTORY OF THE PROCEEDINGS

A.    2018-2020

This dispute began with a dependency case. In 2018, mother voluntarily gave up custody of the minor, who at the time was five months old. (*In re J.L, supra.*) The San Joaquin County Human Services Agency filed a dependency petition pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (g). (*Ibid.*) At a contested review hearing on March 20, 2019, the San Joaquin County juvenile court awarded legal and physical custody of the minor to father, with mother to have supervised visitation. (*Ibid.*) The court also terminated jurisdiction over the minor. (*Ibid.*) The court signed its written order and final judgment (commonly referred to as an exit order) on April 17, 2019, and the court clerk filed the exit order in the San Joaquin County family court on April 25, 2019. This commenced a family law action in the San Joaquin court, case No. FL-2019-2248.

Mother appealed the juvenile court's decision. She filed her notice of appeal on March 28, 2019, nearly one month before the San Joaquin court filed its exit order. As mentioned, this court affirmed the judgment in 2020. (*In re J.L., supra.*)

Also, before San Joaquin County had filed its written exit order, mother initiated efforts to continue litigating the dispute in Sacramento County. On April 19, 2019, she filed a request in that court for a domestic violence restraining order (DVRO) against father. This became case No. 19DV01005. In her application, mother did not request custody or visitation orders. The trial court issued a temporary restraining order on the day the request was filed, April 19, and it set a hearing for May 7, 2019.

Three days later, on April 22, 2019, and still before San Joaquin County had filed its exit order, mother initiated two additional matters in Sacramento County. She filed a petition for custody and support of the minor. This became case No. 19FL02121. She also filed a second request for a DVRO against father. This became case No. 19DV01024.

For both the second DVRO request and the petition for custody, mother executed a declaration under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) on Judicial Council form FL-105. In both declarations, mother declared under penalty of perjury that she had no information about, and had not participated in, another court case or custody proceeding concerning the minor. The Sacramento court issued a second temporary restraining order against father and ordered mother to have sole physical and legal custody of minor. It set a hearing for May 7, 2019.

On April 29, 2019, four days after San Joaquin County had filed its exit order on April 25, mother filed in the Sacramento County custody case an ex parte request for a temporary emergency child custody and visitation order. The court granted mother's request. It awarded mother temporary sole legal and physical custody of the minor and ordered father not to have any visitation. The court set the matter for hearing at a later date.

At the hearing in Sacramento County on May 7, 2019, on mother's second DVRO request, the court granted mother's request for a DVRO against father for five years, and it awarded sole legal and physical custody of minor to mother.

On May 10, 2019, father filed an ex parte request in the Sacramento County custody case for an emergency order to set aside the court's May 7 DVRO and custody order. Father declared he had not received notice of the May 7 hearing. He also disclosed the San Joaquin County custody order to the court.

The Sacramento court granted father's ex parte application. The court's order states: "(1) Based on a review of the pleadings, petitioner [mother] did not advise the

4

court of the 4/25/19 San Joaquin County juvenile court order when she filed her ex parte applications for custody on 4/29/19. Therefore, the court's order of 4/29/19 is vacated along with the referral to family court services. (2) The court consolidates cases 19FL02121 [petition for custody] and 19DV01024 [mother's second request for a DVRO], with the lead case being 19FL02121. (3) The restraining order . . .issued May 7, 2019, is VACATED IN ITS ENTIRETY."

Four days later, on May 14, 2019, mother filed in Sacramento County a motion to quash service to set aside the May 10 order and reinstate her DVRO against father. She argued that by law, the court could not grant a restrained person's request to end the restraining order before a noticed court hearing was held. She also contended she did not receive notice prior to or after the May 10 hearing. A hearing was set for a later date.

On June 14, 2019, mother sought an ex parte order in Sacramento County requesting, among other things, that the Sacramento court communicate with San Joaquin County about the matter. The court set the matter for hearing without granting ex parte relief. It also directed mother and father to comply with all terms and conditions of the San Joaquin County exit order.

On October 8, 2019, Sacramento County ruled on mother's May 14 motion to quash and her June 14 request that the Sacramento court communicate with the San Joaquin court. The trial court found that mother's May 14 motion to quash was now moot as mother no longer sought relief. The court also stated that mother had confirmed that the issues raised in her June 14 request for the court to communicate with San Joaquin County were "now moot in this court." Mother pursued no further relief on these rulings or the May 10, 2019, order.

Meanwhile, back on April 30, 2019, mother filed a request in San Joaquin County to modify custody. She based this request on the first temporary DVRO she had obtained in Sacramento County. On May 8, 2019, mother modified her request to include a

request to change venue to Sacramento County. She asserted that all parties now lived in Sacramento County.

Following a hearing on June 11, 2019, the San Joaquin court ruled only that mother have visits with the minor for one hour each Sunday. The court continued the matter for further orders. It did not transfer venue to Sacramento County. Later, on October 3, 2019, and following a hearing, the San Joaquin court declared that father has sole legal and physical custody of minor. It also gave mother additional time for supervised visits.

Mother filed a notice of appeal from San Joaquin County's October 3 decision. (*Livingston v. Liang* (C090962).) On January 28, 2020, mother abandoned the appeal.

B.     2023-2024

Mother began litigating the minor's custody again in 2023. On September 14, 2023, she filed a motion in San Joaquin County to modify custody and transfer venue to Sacramento County. She also asked the court to grant her legal custody until a final custody order was issued by the Sacramento court granting her physical custody. The San Joaquin court denied mother's motion on October 27, 2023, and it ruled that all previous orders remained. Mother filed a notice of appeal from the October 27 order, which initiated appeal No. C099930.

On January 26, 2024, father filed a motion and an ex parte request in San Joaquin County to change visitation. He sought to deny mother all supervised visitation and confirm that he has sole legal and physical custody of the minor. The court granted the ex parte request and set the matter for hearing.

On January 31, 2024, mother filed an ex parte request in San Joaquin County asking the court to restore the visitation order it had made on October 3, 2019, and set aside its prior order of January 26, 2024, temporarily denying her visitation. The court denied the ex parte request, but it set the matter for hearing on March 7, 2024. Mother

6

filed notices of appeal from both the January 26, 2024, and the January 31, 2024, ex parte orders. These notices initiated appeal No. C100470.

At the March 7, 2024, hearing, the San Joaquin court heard both father's and mother's requests to modify visitation. Mother initially asked the court to drop both requests because of the pending appeal. When the court proposed to modify visitation, mother contended San Joaquin County did not have jurisdiction to do so because jurisdiction rested with Sacramento County. The court stated it believed it had emergency jurisdiction to make orders, but mother contended the question of jurisdiction had not yet been addressed. The court asked mother if she would stipulate to the court having jurisdiction, but mother refused, asserting that Sacramento County had jurisdiction.

After hearing from father's counsel that this matter started as a dependency case in San Joaquin County, the San Joaquin court believed there were different facts that needed to be vetted before it could issue a visitation order. It thus denied father's motion, and it dropped mother's motion as she had requested. Mother filed a notice of appeal from the March 7, 2024, hearing, which is also part of appeal No. C100470.

Meanwhile, back on September 21, 2023, mother filed a motion in Sacramento County to change venue of the custody case from San Joaquin County to Sacramento County and to modify custody. The Sacramento court denied mother's motion on February 5, 2024. It also dismissed mother's petition for custody. The court announced it had conferred with the San Joaquin court. Both judges had concluded that custody jurisdiction rested with San Joaquin County. San Joaquin County had made custody orders and would have to approve a change of venue. Sacramento County had not previously made custody orders except in the initial ex parte request by mother for a DVRO, which was subsequently vacated. Mother filed a notice of appeal from the February 5, 2024, order, which initiated appeal No. C100782.

7

Despite dismissing the custody petition, Sacramento County kept the case open for the limited purpose of a trial on a request by mother for a DVRO she had filed on December 6, 2023. Following a half-day trial, the court denied that request on March 29, 2024. Mother filed a notice of appeal from the March 29 order, which is part of appeal No. C100782.

On February 13, 2024, mother filed in Sacramento County a request to renew the five-year DVRO the court had vacated on May 10, 2019. On February 21, 2024, mother filed in the same court a request to set aside the court's February 5, 2024, denial of her motion to change venue and modify custody. The court denied both of mother's motions on March 5, 2024. The court explained it could not move venue from San Joaquin County to Sacramento County. Denying the request to renew the DVRO, the court stated it had vacated the DVRO and all orders the DVRO had contained in 2019. The time to raise a procedural defect had passed, and mother could not cite any authority permitting the court to revisit that decision at this late date. Mother filed a notice of appeal from the March 5 order, which is part of appeal No. C100782.

On mother's motion, we consolidated C099930, C100470, and C100782 for purposes of briefing, oral argument, and decision.

In summary, mother appeals from the following orders:

(1) The October 27, 2023, order by San Joaquin County denying mother's motion to modify custody and change venue to Sacramento County (C099930).

(2) The January 26, 2024, order by San Joaquin County granting father's ex parte request to end mother's visitation with minor pending a hearing (C100470).

(3) The January 31, 2024, order by San Joaquin County denying mother's ex parte request to restore its visitation order of October 3, 2019, and setting the matter for hearing (C100470).

(4) The February 5, 2024, orders by Sacramento County denying mother's motion to change venue from San Joaquin County and modify custody, declaring San Joaquin

8

County has jurisdiction over custody, and dismissing mothers' petition for custody (C100782).

(5) The March 5, 2024, order by Sacramento County denying mother's request to renew the court's DVRO it had vacated in 2019 and denying her motion to set aside the court's February 5, 2024, order (C100782).

(6) The March 7, 2024, order by San Joaquin County dropping mother's motion to restore the October 3, 2019, visitation order at her request and denying father's request to end mother's visitation (C100470); and

(7) The March 29, 2024, order by Sacramento County denying mother's request for a DVRO against father (C100782).

Some of these orders are not appealable. The October 27, 2023, order to the extent it denies mother's motion to change venue is not appealable. The proper remedy is a petition for writ of mandate. (Code Civ. Proc., § 400.) The January 26, 2024, ex parte order denying mother visitation pending a hearing is not appealable, as temporary custody orders are not appealable orders. (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 556-565.)

The January 31, 2024, order denying mother's ex parte request to restore the October 9, 2019, visitation order and set aside the January 26, 2024, order temporarily denying her visitation is effectively an order denying reconsideration of the court's January 26, 2024. Orders denying reconsideration are not separately appealable. (Code Civ. Proc., § 1008, subd. (g).)

Mother also cannot appeal from the March 7, 2024, order denying father's request to end mother's visitation and dropping mother's motion to restore the 2019 visitation order at her request. She is not legally aggrieved by the order denying father's request and thus does not have standing to appeal that order. (Code Civ. Proc., § 902.) Mother also asked the court to drop her motion. By effectively consenting to the order, she is not

9

an aggrieved party and lacks standing to appeal the order.  (See *In re Marriage of Hinman* (1992) 6 Cal.App.4th 711, 716.)

Mother has also filed second and third requests to augment the record with documents from trial court hearings held after she filed her notices of appeal.  Father expressly does not oppose mother's third request, and he filed no opposition to the second request.  We grant both requests.

DISCUSSION

I

*Jurisdiction Over the Issue of Custody*

The superior court has exclusive jurisdiction over Family Code proceedings. (Fam. Code, § 200.)  When multiple actions on the same controversy are pending between the same parties in more than one California superior court, under the rule of exclusive concurrent jurisdiction, the first superior court to assume jurisdiction " ' " 'has exclusive and continuing jurisdiction over the subject matter and all parties involved until such time as all necessarily related matters have been resolved.' " ' " (*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 682; *Levine v. Smith* (2006) 145 Cal.App.4th 1131, 1135.)  Jurisdiction in this context "refers to a mandatory procedural rule, not to authority over the subject matter or parties in a fundamental sense." (*Consumer Advocacy Group,* at p. 682.)

The rule of exclusive concurrent jurisdiction "is not 'jurisdictional' in the sense that failure to comply renders subsequent proceedings void." (*People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 772.)  "The rule is established and enforced not 'so much to protect the rights of parties as to protect the rights of Courts of co-ordinate jurisdiction to avoid conflict of jurisdiction, confusion and delay in the administration of justice.' " (*Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 787.)

10

An exception to this priority of jurisdiction exists for dependency cases. Under Welfare & Institutions Code section 304, a juvenile court "has *exclusive* jurisdiction over custody and guardianship issues regarding a minor who is the subject of dependency proceedings," even if jurisdiction is acquired later in time. (*A.H. v. Superior Court* (2013) 219 Cal.App.4th 1379, 1388; *Marr v. Superior Court* (1952) 114 Cal.App.2d 527, 531-532.) A juvenile court retains sole and exclusive jurisdiction of matters relating to custody and visitation of the minor until the dependency petition is dismissed or dependency is terminated. (Welf. & Inst. Code, § 304; Cal. Rules of Court, rule 5.620(a) [subsequent references to rules are to the California Rules of Court].)

At the time of dismissing the dependency petition, the juvenile court may issue an exit order that determines the minor's custody. (Welf. & Inst. Code, § 362.4, subd. (a).) The exit order is a final judgment and remains in effect after the juvenile court terminates its jurisdiction. (Welf. & Inst. Code, § 302, subd. (d).) The order continues until modified or terminated by a subsequent order of the superior court. (Welf. & Inst. Code, § 362.4, sub. (b).)

As was done here, the exit order is used to open a file in the superior court in the county where the parent who has been given custody resides. (Welf. & Inst. Code, § 362.4, subd. (c).) The juvenile court clerk transmits the order to the superior court clerk who immediately upon receipt opens a file and assigns a case number. (Welf. & Inst. Code, § 362.4, subd. (d).) Once the juvenile court issues its exit order and terminates its jurisdiction, the superior court has the responsibility to enforce the exit order. (See *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1169.) The parties may seek relief or modification of the exit order in the superior court upon a showing of a significant change of circumstances and that modification is in the best interests of the child. (Welf. & Inst. Code, § 302, subd. (d).)

Mother contends that San Joaquin County, which through the dependency petition had exclusive jurisdiction over minor's custody, lost that jurisdiction, and Sacramento

11

County gained jurisdiction over minor's custody in 2019 when it filed its first orders concerning minor's custody after the San Joaquin court dismissed its dependency jurisdiction. She claims that as a result, Sacramento County's earlier custody orders in her favor should prevail.

Mother argues as follows: When San Joaquin County pronounced its exit order on March 20, 2019, it properly terminated is jurisdiction. However, rule 5.700 requires that when a juvenile court determines custody and terminates its jurisdiction, the exit order establishing custody jurisdiction in the family court must be prepared on Judicial Council form JV-200, signed by the court, transmitted to the family court, and filed there to open a new custody proceeding. (Rule 5.700(b), (c).)

When the San Joaquin County juvenile court pronounced its exit order and terminated its jurisdiction on March 20, 2019, it did so only by way of a minute order, not by means of form JV-200. Mother asserts that the court's failure to adhere to rule 5.700's procedural requirements at the time it announced its exit order nullified that decision and, because the juvenile court terminated its jurisdiction, nullified any custody orders the court issued after March 20. Having terminated its jurisdiction on March 20, the court purportedly lacked jurisdiction when it signed the exit order on April 17, 2019, and when the order was filed on April 25, 2019, rendering those actions void.

Mother's argument continues: She contends that because San Joaquin County lost jurisdiction on March 20, 2019, Sacramento County gained continuing exclusive jurisdiction on April 22, 2019, when it granted mother's second request for a temporary DVRO against father and awarded temporary custody of minor to mother. Mother argues that with no valid jurisdictional determination made elsewhere, Sacramento County exercised emergency jurisdiction which became exclusive, continuing jurisdiction. (Fam. Code, §§ 3424, subd. (b); 3422, subd. (a).) Much of mother's appeal hinges on her contention that Sacramento County gained exclusive jurisdiction over custody issues.

12

Mother is correct that use of form JV-200 is mandatory. (*In re Anna T.* (2020) 55 Cal.App.5th 870, 878; Welf. & Inst. Code, § 362.4, subd. (e); rule 5.700(b).) A dependency court's failure to issue its exit order on form JV-200 deprives that order of continuing validity following the court's termination of jurisdiction. (*In re Anna T.,* at p. 879.)

It is also true that, generally, a court order is effective upon its pronouncement in open court. (*In re Markaus* (1989) 211 Cal.App.3d 1331, 1336.) However, "where a statute requires a certain form of order, the order is effective only when made in the statutory form." (*Id*. at p. 1337.) Form JV-200 is such a statutory form.

Welfare and Institutions Code section 362.4 and rule 5.700(b) required San Joaquin County to issue its exit order only on form JV-200. As a result, its exit order and its termination of jurisdiction were not effective when it announced the order on March 20, 2019. They became effective only upon the court's use of form JV-200 and its execution and filing of the order on that form, which occurred on April 25, 2019.

Thus, contrary to mother's argument, San Joaquin County did not lose custody jurisdiction on March 20, 2019. The dependency court's termination of jurisdiction became effective on April 25, 2019, and up to that date, San Joaquin County maintained and exercised exclusive dependency jurisdiction over minor. Upon the filing of the exit order on April 25, 2019, jurisdiction over minor's custody by law transferred to the San Joaquin County family court, and the exit order continued in effect. (Welf. & Inst. Code, §§ 362.4, subds. (a), (b); 302, subd. (d).) At that point, San Joaquin County's jurisdiction became and continues as exclusive concurrent jurisdiction.

At no time since the dependency petition was filed in 2018 did San Joaquin County lose priority of jurisdiction over minor's custody. Mother's filing of her request for a DVRO and custody order on April 22, 2019, and any other filing she made at any time in Sacramento County did not result in the transfer of custody jurisdiction or venue from San Joaquin County to Sacramento County.

Sacramento County recognized its lack of priority jurisdiction in 2019 upon being notified of San Joaquin County's exit order. Mother had misled the court to believe no other custody order or case existed. Recognizing the San Joaquin County exit order, the Sacramento court on May 10, 2019, vacated its April 29, 2019, custody award to mother and its May 7, 2019, DVRO and custody order in its entirety, which had been based on mother's April 22, 2019, request for a DVRO.

Sacramento County recognized its lack of priority jurisdiction a second time on February 5, 2024, when it dismissed mother's petition for custody and declared the Sacramento court and the San Joaquin court had determined that priority of custody jurisdiction rested with San Joaquin County.

Indeed, mother acquiesced to San Joaquin County's exclusive concurrent jurisdiction. After filing her motion in Sacramento County to quash and set aside the May 10, 2019, order, the Sacramento court on June 14, 2019, ordered mother and father to comply with the terms and conditions of the San Joaquin County exit order. On October 8, 2019, the Sacramento court ruled that mother no longer sought relief and her motion to quash had become moot, and the issues she had raised concerning San Joaquin County were also moot. Mother did not seek further timely relief from these orders.

Additionally, since the notices of appeal were filed in this matter, mother has expressly consented to San Joaquin County exercising custody jurisdiction over the minor. During a hearing in San Joaquin County on January 17, 2025, to hear various motions brought by mother, she agreed with the court that San Joaquin County had jurisdiction over minor's custody.

San Joaquin County's exercise of custody jurisdiction over minor was first in time as exclusive dependency jurisdiction and continued in effect as exclusive concurrent jurisdiction without break, depriving Sacramento County of any claim to priority of jurisdiction over minor's custody. It has rightly deferred to San Joaquin County. All of mother's arguments to the contrary are without merit.

14

II

*Emergency Jurisdiction*

A superior court has temporary emergency jurisdiction to make custody orders in an emergency when a minor who is present in this state has been abandoned or the child, its sibling, or its parent, is threatened with mistreatment or abuse. (Fam. Code, § 3424, subd. (a).) This is so even when UCCJEA jurisdictional grounds are otherwise lacking. (28 U.S.C. § 1738A(c)(2)(C); Fam. Code, § 3424, subd. (a); Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2025) ¶ 3:12.)

Mother contends San Joaquin County was exercising only emergency jurisdiction over minor, and this jurisdiction lapsed. She asserts that on May 8, 2019, she provided the San Joaquin court with Sacramento County's May 7, 2019, DVRO and custody order and she confirmed Sacramento's custody jurisdiction. But at a May 17, 2019, hearing, she sought San Joaquin County's temporary intervention to prevent the minor's disappearance while father had actual custody of the minor and Sacramento County's DVRO and custody matters were being resolved. Without citing to the record, mother claims the San Joaquin court agreed to assist her. It would talk with the Sacramento County judge and would eventually relinquish jurisdiction to Sacramento County. Mother contends San Joaquin County did not relinquish its emergency jurisdiction, as it continued to assist her, and its jurisdiction likely lapsed in 2020. She claims the San Joaquin court wrongfully denied her requests in 2023 and 2024 to transfer venue or set an end date to its emergency jurisdiction. Mother argues any orders issued by San Joaquin County after its emergency jurisdiction should have ended are void.

Mother's argument is incorrect. At no time did San Joaquin County exercise only emergency jurisdiction over minor's custody. As explained above, the San Joaquin court gained exclusive jurisdiction upon the filing of the dependency petition in 2018, and it retained exclusive concurrent jurisdiction upon the filing of the exit order and the

15

commencement of the custody matter in the family court.  Mother's filings in either the San Joaquin County or Sacramento County did not alter the exclusive concurrent jurisdiction the San Joaquin court exercised.

Although the custody matter did not involve emergency jurisdiction, the judges in San Joaquin County and Sacramento County in fact conferred over which court was the appropriate court to exercise custody jurisdiction, and they reached a determination.  At the hearing in Sacramento County on February 5, 2024, on mother's motions to change venue and modify custody, the trial court, Judge Kara Ueda, stated that at the parties' request it had spoken with Judge Jonathan W. Fattarsi of San Joaquin County.  The court continued, "I have conferred with Judge Fattarsi, and we have both concluded that the appropriate place for the custody issues to be heard is in San Joaquin County.  There is a dependency matter in San Joaquin County, and custody orders had been made and should continue to be made there, and any request to change venue should be filed in San Joaquin County, and it looks like one had already been filed and denied in San Joaquin County as well."  The Sacramento court effectively ruled that San Joaquin County was exercising exclusive concurrent jurisdiction, not emergency jurisdiction.

Mother contends that on March 7, 2024, she formally challenged San Joaquin County's jurisdiction.  She claims that at the hearing that day, Judge Fattarsi acknowledged San Joaquin County had only emergency custody jurisdiction.  Despite this acknowledgement, the court did not specify the nature of the emergency or issue any ruling to protect minor, claiming it needed more information and vetting of the facts. Mother also alleges that when the San Joaquin court communicated with the Sacramento court, it misled the Sacramento court by falsely asserting San Joaquin County was the proper venue.  Its admission of emergency jurisdiction implies all its orders were temporary and did not carry any exclusive or continuing authority.  It thus should have granted her motions in 2023 and 2024 to change venue.  Mother claims San Joaquin

16

County's continued exercise of emergency jurisdiction encroached upon Sacramento County's exclusive jurisdiction.

Mother overstates the San Joaquin court's comments at the March 7, 2024, hearing. The hearing was held on mother's motions to change venue and to reconsider the court's prior order on visitation, and on father's motion to end supervised visits. Mother asked to drop her and father's motions from calendar because she had filed an appeal. The court suggested ordering a different type of visitation, but mother asserted the court did not have jurisdiction. The court stated, "I think I have emergency jurisdiction to make orders. [¶] . . . [¶] If I don't have jurisdiction, I can't make any orders at all. If I do have jurisdiction, which I think I do, I can make – I can order a different type of supervised visits . . . ." Mother still questioned whether the court had jurisdiction.

The court asked mother if she would stipulate that it had jurisdiction, but mother refused. Mother claimed that on April 22, 2019, "Judge Appel [Judge Robin Appel of San Joaquin County] made the first order from family court which gave me custody and that was a temporary order. In that order, it gave Sacramento jurisdiction." She contended San Joaquin had no jurisdiction even though its order of April 2019 was valid.

Counsel for father argued that Sacramento County had already passed on the issue of jurisdiction, and it decided it was not the appropriate county. Jurisdiction initially started with a dependency case in San Joaquin County giving that county primary jurisdiction over custody. That jurisdiction passed to the San Joaquin County family court when the dependency court issued its exit order.

Hearing this, the court denied father's motion to modify, and it declared that mother's matter had been dropped at her request. The court stated there were different facts available that needed to be vetted before it could make any decision.

Contrary to mother's assertion, the San Joaquin court at the March 7, 2024, hearing did not state it had only emergency custody jurisdiction. The court believed it

17

had emergency jurisdiction to revise mother's visitation order, but in the end, it made no decision on that issue. Hearing that it likely had exclusive jurisdiction, the court ended the hearing without modifying visitation. The court's statement had no effect on the continued exclusive concurrent jurisdiction of the San Joaquin court or the continued validity of that court's orders.

Additionally, the record does not support mother's assertion at the hearing that Judge Appel of San Joaquin County on April 22, 2019, granted mother temporary custody over minor. There is no evidence of any hearing held on April 22, 2019, in San Joaquin County. On April 30, 2019, mother petitioned for an ex parte custody order. Court Commissioner Cheryl A. McCann denied the petition. Mother apparently applied again for an ex parte custody order on May 8, 2019. Judge Appel denied any temporary relief. The court set the matter for hearing on June 11, 2019, where Judge Appel did not grant mother a custody order. And at a hearing on October 3, 2019, Judge Appel declared that father has sole legal and physical custody of minor. There is no evidence Judge Appel ever issued a custody order in favor of mother.

It is possible that mother confused Judge Appel with the Sacramento County judge who granted mother a temporary DVRO and custody order on April 22, 2019. But, as we have explained, San Joaquin County exercised exclusive custody jurisdiction over minor's custody on April 22, 2019, and the Sacramento court, upon learning of the San Joaquin County exit order, vacated its April 22, 2019, DVRO and custody order. It was thus as if that order had never been issued.

Contrary to mother's claim, San Joaquin County did not mislead the Sacramento court. The two courts analyzed the facts and the status of orders, and they rightly concluded that San Joaquin County continued to have exclusive concurrent jurisdiction over minor's custody. At no time did San Joaquin County exercise only emergency jurisdiction or lose its priority of jurisdiction over custody. All of mother's arguments

18

that rely on her contention that San Joaquin County exercised emergency jurisdiction are meritless.

To the extent mother contends San Joaquin County erred by denying her requests to change venue because it exercised only emergency jurisdiction, we lack jurisdiction to address her claim. As stated above, a trial court's denial of a motion to change venue may be challenged only by petition for writ of mandate. Because mandate is the proper remedy, no appeal lies. (Code Civ. Proc., § 400; *Calhoun v. Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39, 41-42, disapproved on another ground in *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 888, fn. 6.)

III

*Validity of the May 10, 2019, Ex Parte Order*

Ex parte temporary restraining orders issued under the Domestic Violence Protection Act become unenforceable if a hearing is not held on the petition within 21 or 25 days after the temporary order was granted unless the court extends the order. (Fam. Code, §§ 240, subd. (c); 242, subd. (a); 6327.)

If an action is filed by a party other than the protected party to terminate or modify a protective order prior to the order's expiration date, the moving party must give the protected party notice of the proceeding by personal service pursuant to Code of Civil Procedure section 1005, subdivision (b), which requires service at least 16 court days before the hearing. (Fam. Code, § 6345, subd. (d).) If the protected party could not be notified prior to the hearing to modify or terminate the protective order, the court must deny the motion to terminate or modify without prejudice or continue the hearing until the protected party can be properly noticed. (Fam. Code, § 6345, subd. (d).)

Mother raises a number of arguments to attack Sacramento County's ex parte order of May 10, 2019. The May 10 order vacated the court's custody order of April 29, 2019, and its five-year DVRO and custody order issued May 7, 2019. Mother argues the

19

May 10 order expired and was invalid, and the Sacramento court erred in relying on the effects of the May 10 order on February 5, 2024, when the court denied mother's motion to change venue, declared San Joaquin County had jurisdiction, and dismissed mother's petition for custody. Mother also argues the Sacramento court erred by relying on the May 10 order on March 5, 2024, when the court denied mother's request to renew the 2019 DVRO on her claim that a valid DVRO existed, and on March 29, 2024, when the court denied mother's request for a separate DVRO.

### A. Mother's specific arguments

Mother claims the May 10, 2019, order expired and became unenforceable on May 31, 2019, under Family Code section 242 because the court did not hold a hearing on father's petition within 21 days of the ex parte order's issuance nor did the court extend the order. Mother argues that as a result, the five-year DVRO that the May 10 order vacated was automatically reinstated.

Mother also contends that father did not follow the procedures required under Family Law Code section 6345, subdivision (d), to terminate the five-year DVRO. He did not personally serve mother with his petition at least 16 court days before the hearing or use the prescribed Judicial Council forms. The trial court also did not use the required Judicial Council form to terminate the DVRO, former DV-400 (superseded effective January 1, 2025, by DV-330). Mother asserts that an ex parte order cannot permanently modify or terminate a DVRO. Therefore, the May 10 order temporarily vacated the May 7 DVRO and custody order for 21 days, with the custody order being restored on May 31, 2019. Mother also asserts the DVRO and custody order were thus reinstated as of February 5, 2024, March 5, 2024, and March 29, 2024.

Additionally, mother contends the May 10 order did not affect the May 7, 2019, order's custody determination. Mother claims the May 10 order stated only that the restraining order issued on May 7 was vacated in its entirety. However, the May 7 order

20

included a custody order which was purportedly not part of the restraining order.  Thus, the May 10 order did not vacate the separately issued May 7 custody order.

Mother argues that as a result of these deficiencies, the Sacramento court erred in concluding the May 10 order permanently vacated the May 7 DVRO and custody order.  She also asserts that the court's reliance on the May 10 order in subsequent motion hearings prejudiced her.  Her separate petition for custody was not affected by the May 10 order, so the trial court erred on February 5, 2024, when it designated San Joaquin County as the proper venue and dismissed the custody petition.

Additionally, she argues the Sacramento court on March 5, 2024, incorrectly denied mother's request to renew the five-year DVRO based on the mistaken assumptions there was no active DVRO or valid custody order and that the Sacramento court lacked jurisdiction.  Mother asserts that both the DVRO and the custody orders issued in 2019 remained valid or were automatically reinstated, and for that reason she asks us to reverse the February 5, 2024, and March 5, 2024, orders, and to reverse as moot the court's denial on March 29, 2024, of her request for a separate DVRO.

B.     Analysis

Mother has forfeited this claim.  The time to challenge the May 10, 2019, order has long since expired.  Under Code of Civil Procedure section 904.1, subdivision (a)(6), a minute order that dissolves an injunction, such as a restraining order, and which does not order preparation of a formal order, is an appealable order.  (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1090-1091.)  The May 10 order was an appealable order because it dissolved an injunction, and the trial court did not direct a party to prepare a formal order.

At most, mother had up to 180 days from the order's filing to file a notice of appeal.  (Rule 8.104, subd. (a)(1)(C).)  She did not timely file a notice of appeal from the order.  As a result, the May 10 order became final and immune from the attacks mother

21

raises here. "In general, an appealable order that is not appealed becomes final and binding and may not subsequently be attacked on an appeal from a later appealable order or judgment." (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421.) "A party's failure to file a timely appeal from an appealable order generally shows acquiescence in the ruling[.]" (*People v. DeLouize* (2004) 32 Cal.4th 1223, 1232.)

Mother also forfeited her claim by dropping the challenge she did raise against the May 10 order. On May 14, 2019, mother filed a motion to quash service to set aside all of the May 10 orders and reinstate her DVRO against father. In that motion, mother raised some of the arguments she raises here. She argued that the law prohibited the court from granting a restrained person's request to end the restraining order before a noticed court hearing is held, and the law required father to personally serve her. Allegedly, no noticed hearing was held, and she was not personally served.

But at the October 8, 2019, hearing on mother's motion to quash, the court stated mother no longer sought the relief she had sought in her motion, and that the motion to quash was "now moot." Nothing in the record indicates mother timely challenged the court's ruling.

Mother's contention that the May 10 order only temporarily vacated the May 7 DVRO and custody order succumbs with the May 10 order becoming final. Despite the court's use of an ex party order, the effect of vacating an order "is to eliminate the judgment." (*Bulmash v. Davis* (1979) 24 Cal.3d 691, 697.) "Once vacated, the status of the parties that existed prior to the judgment is restored and the situation then prevailing is the same as though the order or judgment had never been made." (*Ibid*.) Because the May 7 DVRO and custody order were vacated by the May 10 order, and the May 10 order is now final, the May 7 DVRO and custody order have effectively been vacated permanently. They were not restored or reinstated by law at any time. If mother believed the court erred in vacating the May 7 orders, she was required to timely file an appeal from the May 10 order, which she did not do.

Because mother did not file an appeal from the May 10 order, and she abandoned the relief she was pursuing against the order, her attacks in this appeal on the order and its effects on the May 7, 2019, DVRO and custody order are forfeited as untimely. Moreover, because the May 10 order is a final order now immune from challenge, it has res judicata effect barring mother's claims and binding the court to its terms as between the parties. Sacramento County thus did not err by relying on the order in its rulings on February 5, 2024, March 5, 2024, and March 29, 2024.

IV

*Lack of Service of Father's Responsive Declaration*

On September 21, 2023, mother filed in Sacramento County her motion to modify custody and change venue from San Joaquin County to Sacramento County. The motion stated mother's street address was a location in Homestead, Pennsylvania. A hearing on the motion was set for November 21, 2023.

Rule 5.92 required father's response to the motion be made on form FL-320 and served on all parties in the case. (Rule 5.92(g).) Father filed his responsive declaration using form FL-320 on November 9, 2023. He served his declaration on mother by mail at her address in Homestead, Pennsylvania.

At the November 21, 2023, hearing, the trial court continued the matter, and it ordered mother to serve and file supplemental materials and father to serve and file a response. Before the hearing ended, mother stated she did not receive any reply to her motion from father. She asked the court to direct that father "respond to my Houston address, which I'm going to provide to them." Father's counsel agreed to "copy anything to Houston."

Ultimately, at the hearing on February 5, 2024, the Sacramento court denied mother's motion to change venue, and it dismissed her petition for custody.

23

Mother contends the lack of receipt of father's responsive declaration to her motion violated rule 5.92(g) and deprived her of due process by preventing her from responding to father's declaration and preparing for the hearing on November 21, 2023. She asserts that due to the lack of service, she was unaware that father had "misinformed" Sacramento County about the San Joaquin County exit order, which resulted in the Sacramento court purportedly relinquishing custody jurisdiction "despite Mother's valid sole legal and physical custody and an active 5-year DVRO against Father issued by the Sacramento court." Mother argues this failure of service requires us to reverse the Sacramento court's February 5, 2024, order denying her motion.

Mother has forfeited this contention. Rule 2.200 requires attorneys and self-represented parties whose mailing address changes while an action is pending to serve on all parties and file a written notice of change of address. Mother directs us to no evidence in the record indicating she served on father and filed with Sacramento County a written notice of her new Houston address at any time prior to father serving and filing his responsive declaration. " '[T]he "person to be served" has the burden of notifying the court of any change of address, and failure so to do does not enable him to claim improper notice.' " (*Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 31.) Because mother did not timely serve and file a written notice of change of address, she has forfeited this claim.

V

*Judicial Conflicts of Interest*

Mother contends that the two San Joaquin County judges who heard motions in this matter in 2024 failed to disclose conflicts of interest. She argues that as a result of these conflicts, we should reverse that court's orders declaring San Joaquin County to be the proper venue.

24

Judge Fattarsi of San Joaquin County heard mother's September 14, 2023, motion to modify custody and change venue to Sacramento County. The court denied the motion on October 27, 2023.

Mother contends that Judge Fattarsi erred by not disclosing a conflict of interest or not recusing himself. She claims Judge Fattarsi served as a supervisor and deputy public defender in the San Joaquin County Public Defender's office from 2005 to July 2019. Mother states she was represented by that office from 2018 to March 2019 in the dependency case.

Mother also asserts that she raised concerns about the dependency case to Judge Fattarsi's predecessor, Judge Appel. Judge Appel purportedly ordered an investigation into discrepancies in the dependency court records, particularly regarding allegations concerning mother's mental health and concerning father's alleged history of domestic violence. Mother alleges that Judge Fattarsi refused to conduct the investigation, despite ruling that the prior orders remained in effect.

Mother contends another conflict of interest arose with Judge Danielle Ramirez of San Joaquin County. On January 26, 2024, father filed a motion and ex parte application in the San Joaquin court to deny mother visitation with the minor. The court granted the ex parte application pending a hearing on the motion. The matter was originally assigned to Judge Ramirez for hearing, but she recused herself as of January 29, 2024.

Mother asserts that Judge Ramirez had an undisclosed conflict of interest. Judge Ramirez represented the "San Joaquin CPS" against mother in the dependency case. Mother alleges that Judge Ramirez participated in an ex parte communication with an unidentified party, after which the party was removed from the call. Mother asserts this occurred around the same time that Judge Ueda of Sacramento County held a call with the San Joaquin court in the family law case without either party present, further raising concerns of systemic bias.

25

Mother has forfeited this argument. Rule 8.204 requires appellate briefs to support references to factual matters with citations to the record. (Rule 8.204(a)(1)(C).) Mother provides no evidence or citations to the record to support her allegations against Judge Fattarsi and Judge Ramirez. We deem arguments that do not contain appropriate references to the record as forfeited. (*Brown v. El Dorado Union High School Dist.* (2022) 76 Cal.App.5th 1003, 1021-1022.)

Mother also forfeited her contentions against Judge Fattarsi by not seeking to disqualify him for bias at the trial court level. "In general, if the trial court refuses or fails to disqualify itself, the complaining party must seek disqualification at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 994.) By failing to do so when the relevant events occur, the complaining party forfeits the right to complain about them on appeal and loses any additional claims that the trial court's alleged bias affected subsequent rulings. (*Ibid*.)

There is no evidence in the record that mother filed a challenge for cause to disqualify Judge Fattarsi under Code of Civil Procedure section 170.1, nor is there any evidence in the record showing that mother attempted to use her peremptory challenge under Code of Civil Procedure section 170.6 against Judge Fattarsi. By not seeking disqualification, mother has forfeited her claims of bias against Judge Fattarsi.

In any event, Judge Fattarsi subsequently explained away any potential conflict. At a hearing on a motion by mother on June 2, 2025, mother asserted there was a presumed conflict of interest because Judge Fattarsi was a public defender when mother was represented by the public defender's office in the dependency matter. The judge explained he had supervised the public defender's preliminary hearing unit, which is separate from juvenile dependency. There was no conflict of interest.

Additionally, because Judge Ramirez recused herself from hearing father's motion, mother's contentions against her are moot.

26

## VI

*Compliance With Family Code Section 3429 and Rule 5.52*

Family Code section 3429 (section 3429), part of the UCCJEA, requires parties in a child custody proceeding to disclose in their first pleadings or in attached affidavits the child's present and past addresses and the names and addresses of persons with whom the child has lived except where there are allegations of domestic violence or child abuse. (Fam. Code, § 3429, subd. (a).)  The party must state whether it has participated in any other proceeding concerning the child's custody or knows of any other proceeding that could affect the current proceeding.  (Fam. Code, § 3429, subd. (a)(1), (2).)

If a party does not provide the required information, the court, upon motion of the party or its own motion, may stay the proceeding until the information is furnished. (Fam. Code, § 3429, subd. (b).)  Each party has a continuing duty to inform the court of any proceeding that could affect the current custody proceeding.  (Fam. Code, § 3429, subd. (d).)

Rule 5.52 clarifies that to fulfill the obligation under section 3429, each party must complete, serve, and file form FL-105/GC-120, a declaration under the UCCJEA, when there are children of their relationship under the age of 18 years.  (Rule 5.52(a)(1).)  The form is a required attachment to the petition and response in an action for custody.  (Rule 5.52(a)(2).)

Rule 5.52 also reenforces each party's continuing duty to update the court.  In any child custody proceeding, "a party has a continuing duty to inform the court if he or she obtains further information about a custody proceeding in a California court or any other court concerning a child who is named in the petition, complaint, or response."  (Rule 5.52(b).)  To comply with this duty, a party must file and serve an updated UCCJEA form.  (Rule 5.52(b).)

Mother contends these provisions impose a duty on the *courts*. She argues that under section 3429 and rule 5.52, "both courts were required to collect FL-105/GC-120 forms to assess the child's custody history before making child custody or child custody jurisdiction decisions, but they failed to do so, resulting in child custody jurisdiction decisions unsupported by proper jurisdictional facts." Mother asserts the lack of sufficient information to make jurisdictional determinations resulted in incorrect jurisdiction decisions, requiring us to reverse and remand all orders on appeal.

Mother's argument is forfeited. As stated above, rule 8.204 requires appellate briefs to support references to factual matters with citations to the record. (Rule 8.204(a)(1)(C).) Mother provides no evidence or citations to the record to support her contention that either trial court failed to assess the information provided to them by the parties' FL-105s.

Mother's argument is also incorrect. Section 3429 and rule 5.52 impose a duty on *parties* to a custody proceeding, not the courts. The party bears the burden of presenting complete and accurate information in its declaration. Section 3429 vests a court with discretion to stay the proceeding until the required information is furnished, but it does not impose on the court a duty to stay the proceeding. Mother has cited no evidence in the record to suggest either court abused its discretion.

To the extent mother believed father had not provided sufficient information in his declaration, section 3429 gave her a remedy. It authorized her to bring a motion to stay the proceedings until father furnished the required information. (Fam. Code, § 3429, subd. (b).) Mother does not direct us to anywhere in the record showing she brought such a motion. By not taking advantage of this remedy in the trial court, any claim she has that father provided insufficient information in his FL-105 declarations is forfeited on appeal.

## VII

### *Mother's Motions to Augment the Record*

Mother's second and third motions to augment the record rely on subsequent filings and hearings in the superior courts to argue that both San Joaquin County and Sacramento County have since recognized that Sacramento County has jurisdiction over the minor's custody. Much of mother's argument is based on her continuing belief that the May 7, 2019, DVRO and custody order issued by Sacramento County remain valid.

Because we have concluded that San Joaquin County has exclusive concurrent jurisdiction over minor's custody, and that the May 7, 2019, DVRO and custody order have been permanently vacated, the additional trial court records in mother's motions to augment are of no help to mother. None of the records discloses a determination by either court that custody jurisdiction rests with Sacramento County. We thus will not address mother's arguments to the contrary.

It is worth noting that mother's contentions notwithstanding, Sacramento County has again denied her requests to assume custody jurisdiction and enforce the May 7, 2019, DVRO and custody order. On April 30, 2025, the Sacramento court heard multiple motions filed by mother. In these motions, mother requested the court declare that Sacramento County has jurisdiction over minor's custody; and that the May 7, 2019, DVRO and custody order remain valid and were not vacated by a prior ex parte order. (*G.L. v. X.L.* (C103703).)

The Sacramento court denied all of mother's motions. It stated, "The Court notes many, if not most, of the claims presented are either barred [by] res judicata or are untimely requests for reconsideration. While Mother argues the Court of Appeal has made various rulings concerning her case, it is unclear exactly what such ruling is or what Mother believes the impact of such decision would have on her motions. [¶] Mother informed the Court she will not be filing additional similar motions. Mother also

29

informed the Court she had understood the Court invited or encouraged her to file such motions. Mother also informed the Court she has filed complaints or sent letters to various officials within the U.S. government." (*G.L. v. X.L., supra,* (C103703).)

Mother immediately filed a notice of appeal from the Sacramento court's ruling. (*G.L. v. X.L., supra,* (C103703).) However, on August 15, 2025, mother abandoned her appeal. The Sacramento court's ruling is now final.

DISPOSITION

The appeal from the order of the San Joaquin County Superior Court filed October 27, 2023, is dismissed to the extent it challenges the court's denial of mother's motion to change venue. The appeals from the orders of San Joaquin County filed January 26, 2024, January 31, 2024, and March 7, 2024, are dismissed. The remainder of the San Joaquin County order filed October 27, 2023, and the orders of the Sacramento County Superior Court filed on February 5, 2024, March 5, 2024, and March 29, 2024, are affirmed.

Costs on appeal are awarded to father. (Rule 8.278(a).)


_____
HULL, Acting P. J.

We concur:


_____
ROBIE, J.


_____
BOULWARE EURIE, J.